Bernard FLAKES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. B14-89-1142-CR, B14-89-1143-CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 20, 1990.

Rehearing Denied Jan. 17, 1991.

Charles Freeman, Houston, for appellant.

Rowena M. Young, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

Appellant entered a plea of no contest to charges of assault on a police officer (14-89-1142-CR) and possession of cocaine (14-89-1143-CR) and his punishment was assessed at 18 years confinement upon a recommendation by the state. On appeal appellant presents three issues for our consideration: (1) whether the trial court erred in denying appellant's motion to substitute, in the trial court, his present counsel on appeal; (2) whether appellant's appointed counsel rendered reasonably effective assistance, and (3) whether appellant's pleas of no contest were voluntary. We affirm.

In order to address all of appellant's complaints, a detailed history of his two cases is essential. A police officer, on routine patrol in "an area where cocaine (crack) is sold by a number of dealers who loiter about the abandoned and boarded houses" in the 2600 block of Staples Street in Houston, observed appellant, only a few feet from the officers patrol car, discard an object to the ground. The officer exited his vehicle and asked appellant to produce identification. Appellant refused and began fighting the officer. Other officers, summoned by the arresting officer on his hand held radio, arrived; appellant was finally subdued by the use of a tazor gun,

and the crack cocaine he had dropped to the ground was recovered.

Indictments were returned on March 7, 1989, and appellant appeared in court with attorney Charles Freeman on March 14, 1989. The case was reset to March 29th, was carried along and on March 30th, the trial court established the dates for hearing of pre-trial motions as April 12th and trial for April 17, 1989. The notice of setting, signed by both the assistant district attorney and attorney Freeman, provides "Pre–Trial Hearing settings must comply with Article 28.01 CCP Trial Settings are held day to day for two weeks. Subpoenas must be filed 10 days before trial." On March 30th, appellant filed sixteen written motions which were presented to the court, Judge Ted Poe presiding, on April 14th. The docket sheet shows that the case was called for trial on April 17th; the state answered "ready for trial" and the case was carried on the trial docket. The record is unclear as to the sequence of events, but the docket sheet notation shows that the case was called for trial on June 7th, with visiting Judge Don Humble presiding.

Attorney Freeman's first move was to object to Judge Humble sitting on the case, contending the assignment was improper. When Judge Humble overruled that motion attorney Freeman next urged a motion for continuance based upon the absence of two witnesses. After a lengthy discussion, the trial judge stated he would "be happy to issue a writ of attachment" and announced "We'll go ahead and select a jury."

Attorney Freeman then announced he was not ready for trial because "we need as a matter of due course of law to have a chance to raise an objection, proper objection against the panel list as well as the array members who were reassigned for economic reasons without us being present." Again, lengthy argument was offered by appellant. The judge denied the motion. Attorney Freeman then attempted to reargue motions which had been previously filed. One, concerning the jury panel, was apparently only partially ruled upon by Judge Poe and attorney Freeman objected to proceeding because he was entitled to have that motion further ruled upon by Judge Poe. Again, extensive and rambling argument was offered by attorney Freeman. Attorney Freeman then offered lengthy oral objections with extensive rambling argument about "the way he [appellant] looks", finally asking "the court to have a photograph of him taken so that, you know, it can be made a part of the record what he looks like."

Finally, attorney Freeman objected to the panel of jurors who had been waiting outside the courtroom for some time because "the whole panel is polluted." When Judge Humble overruled the objection, attorney Freeman stated "I'm not ready, Your Honor. I don't want to try the case. May I leave?" The trial judge stated "No, you may not leave. So bring the panel in." The prosecutor conducted the state's voir dire of the panel, concluding shortly before noon. The trial court recessed for lunch. When the court reconvened after lunch, the jury panel was discharged because the complainant had been injured in an automobile accident, was unable to appear, and the judge noted on the docket "the case is to be tried another day."

The case was next called for trial on June 27, 1989, before visiting Judge P.K. Reiter. Attorney Freeman filed a motion to recuse Judge Reiter, alleging that he was "biased and prejudiced against [attorney Freeman] ... and [his] religious beliefs"; "was biased and prejudiced for the state" in that in another case he had "allowed the state to comment freely, over the undersigned lawyer's objections in the hearing of the jury, whenever the undersigned lawyer raised timely legal objections; that Judge Reiter has failed to accord [attorney Freeman] full right to be heard ... [by] refusing to allow [attorney Freeman] to present evidence on various evidentiary motions" in the other referenced case; that the conduct of Judge Reiter "is prejudicial to the administration of justice ... in that he forces [attorney Freeman] to suffer extremely long hours during trial of this cause so as to deprive accused of effective assistance of counsel" as evidenced by the record of the other referenced case. Judge Hatten was desig-

nated to hear the recusal motion and at the conclusion of the hearing, the motion was denied.

Attorney Freeman then urged three motions he had filed the previous day and three motions he filed that day—four of which dealt with the questions concerning the composition of central jury panel; one *apparently* requesting the court to consider the motions filed in one cause number as also applying to the other cause number, and the sixth motion was to allow attorney Freeman to pray at the thrice stated times daily, each requiring approximately 15 minutes and a special prayer on Friday afternoon that required some 90 minutes. On the motions challenging the method of selecting the central jury panel, Judge Reiter instructed attorney Freeman to present them to the judge who was impaneling the jury. Judge Reiter formally denied the request for prayer, stating that attorney Freeman could not pray in front of the jury, but stated he would accommodate attorney Freeman so that he could, if possible, be excused for prayer. Attorney Freeman refused to abide the ruling of the court on his motions concerning the central jury panel and continued to insist on a hearing at that time. The judge told counsel that a jury panel of 50 veniremen had been waiting outside the courtroom in a a crowded hallway for about an hour and a half and that the voir dire would then be conducted. He stated that the proof he desired could be put on at 3 p.m., but attorney Freeman continued to argue with the court, and after several more pages of argument by Freeman, the trial judge stated:

No, sir. You don't understand. You may make your offer of proof at 3:00 o'clock this afternoon. Now, either you or I have control of how the trial is conducted. I will let you make your record on your challenge to the array. But that's at 3:00 o'clock this afternoon. It will be considered as though it was done now and timely. That's the ruling of the Court, sir. You're going to have to live with it.

Attorney Freeman then attempted to reurge motions that had already been ruled upon and after again listening to Freeman for several pages of argument, the court declared a recess. When court reconvened, appellant was arraigned and after appellant entered a plea of not guilty, attorney Freeman then objected that appellant had been "mishandled" during the recess by the bailiff within sight of two prospective jurors. The trial court told counsel he could either question the panel or the two jurors individually before the bench "as you see fit."

When state's counsel informed the court it would take approximately 30 minutes for its voir dire, the court asked appellant's counsel how long it would take for his voir dire, and the following occurred:

MR. FREEMAN: As long as is necessary to ask specific questions to the jury if we get that far. I still have an objection before the Court the Court has not allowed.

THE COURT: Your objection is overruled. I've ruled on your motion.

MR. FREEMAN: May I be heard, Your Honor?

THE COURT: I've already ruled on your motion.

MR. FREEMAN: May I be heard?

THE COURT: How long will you take on your voir dire, Mr. Freeman?

MR. FREEMAN: May I be heard?

THE COURT: I've overruled your objection.

MR. FREEMAN: I have a question before the Court.

THE COURT: You have a question of me? What's the question?

MR. FREEMAN: May I be heard?

THE COURT: What is your question to me?

MR. FREEMAN: My question is: May I be heard?

THE COURT: You have been heard, sir. Your objection dealt with the two prospective jurors who allegedly saw something happen to your client by a bailiff, and I've told you you may exercise your right to question those two jurors up here before the bench outside the presence of the jurors, prospective jurors,

and see if that's going to prejudice them if they're selected for the jury. We don't —you still have the full voir dire to go through yet and we can cure any problem if there was one, and there may not even have been one. We have no way of knowing yet, but we can find out in the voir dire process. And that's the ruling of the Court, sir.

MR. FREEMAN: May I be heard, Your Honor?

THE COURT: Not any more than you have been. Anything else?

MR. FREEMAN: May I be heard?

THE COURT: You've already been heard, and you've been given instructions by the Court how you can cure the problem.

MR. FREEMAN: I have not been heard. I'm telling you, I would like to be heard. May I be heard?

THE COURT: Not any more than you have been.

MR. FREEMAN: I may not say anything else on that matter?

THE COURT: You surely may when the voir dire begins. Anything else at this time?

MR. FREEMAN: Yes, sir.

THE COURT: What is that?

MR. FREEMAN: I would like—since the Court is talking about what is alleged in the record I want to put on evidence of what I saw and know so the record is clear that my objection is founded on evidence, not on the Court misstating what I have stated already in the record. I have evidence and three witnesses, me, my client, as well as the gentleman who's helping me on the jury selection, Mr. Ronald Lewis, as well as the bailiff.

THE COURT: Certainly you're welcome to put that evidence on if you're not able to cure it for some reason during the voir dire, and I think you've made a good faith effort doing it. I will grant you leave to put on that evidence at 3:00 o'clock when you'll put evidence on, your complaint as to the array. But we won't do it now and disrupt the orderly process of the trial.

Now, as we go forward with the voir dire, Mr. Freeman, I need to also tell you that I will put a limitation on the amount of time you spend in the voir dire. Now, I'm very well aware that the Court of Criminal Appeals has said that there are certain important questions you're certainly entitled to question the venire about. I will caution you, you better ask those questions up front and get those really important questions answered and then spend your time on what you consider are the less important questions later because there will be a limitation. The last trial in this matter got started, did it or did it—they never got through the voir dire?

Still attorney Freeman continued to argue with the court, moving finally for a mistrial, which the judge deferred acting on until the 3 o'clock hearing. Finally, attorney Freeman stated again he was not ready for trial, charged the trial judge was antagonistic to him and that "My client needs more time to hire a different counselor, try this lawsuit before another judge," and requested permission to call him as a witness to prove what he (the defendant) had told him concerning his "announcing not ready and motion for continuance." He further asked for time to reduce the motion to writing and have the defendant swear to it.

In response, the trial judge stated:

Mr. Freeman, I certainly don't ever intend to cut you off, and I have the greatest respect for you, my friend. If someone sees some sort of antagonism between us they're not looking very clearly. I've known you quite a while, and you've known me. And I certainly have nothing but admiration for your ability. I don't always agree with how you try a lawsuit, and I judge from what you've said to me this morning you don't always agree with the way I try a lawsuit, but that's just lawyers. We rarely agree completely with one another, but I'm certainly not antagonistic to you. I think you're one of the brightest lawyers I happen to know, but besides that you suggest some of the things I say are not true. Perhaps I would suggest some of

the things you say are not true. But in the heat of the moment, lawyers sometimes over-reach.

In any event, I'm going to grant you leave to make your showing on your motion for continuance after it's reduced to writing and your motion to withdraw or be substituted, perhaps your associate yet here could substitute for you. Have we met, sir?

MR. LEWIS: No, Your Honor.

THE COURT: Your face is familiar. And your name, sir?

MR. LEWIS: My name is Ronald H. Lewis. Your Honor.

THE COURT: All right, sir. Maybe you could substitute for Mr. Freeman, but in any event, the case has been scheduled for trial several times and has been on the trial docket since last week, and it's just time to try the lawsuit. But I may change my mind on that and may let you withdraw. And if I do, then I would, of course, favorably consider the defendant's motion for mistrial. But all that evidence I'll grant you leave to put on this afternoon after 3:00 o'clock, and in the meanwhile we're going to go ahead and pick the jury. I'm not cutting you off. I want you to make your record. Put on the evidence which you're entitled to do. Then I'll rule on the evidence on your motion. Anything else before we bring the panel in?

Still attorney Freeman continued with objections (1) on the failure of the court to permit him to "put on evidence in support of the motion for continuance"; (2) that he should be given time to file a motion to withdraw as counsel because the defendant was being denied the effective assistance of counsel; and (3) that the court had handicapped him "because of the Judge's denial of any motion or request for prayer." Counsel then orally asked to be permitted to withdraw from the case but the judge refused. When the judge said "Bring the jury in," attorney Freeman stated he had "at least five" more motions to make and continued to argue for another 14 pages of the record. Finally, even after the jury panel was seated in the courtroom and the trial judge was beginning to address the panel, attorney Freeman was still attempting to "be heard," the trial judge stated: "Excuse me, sir. I'm addressing the jury panel. If you'd be gracious enough to be seated, we'll take it up in a moment. Thank you."

The docket sheet shows that the state's voir dire began at 11:55 a.m. and concluded at 12:35 p.m., when court recessed for lunch. Defense voir dire began at 2:30 p.m. and at 7:20 p.m., when the court determined that a jury of 12 could not be selected from the panel, the following occurred:

MR. FREEMAN: Judge, it's going to be moot because I'm going to challenge number 16 because under 35.16 C2, one witness—and the only reason I'm telling you now, I like him, only reason is to get this over with because I got kids at home. Mr. Richeda said he could not be fair. Mr. Spurlock said he could not be fair. Mr. Nino said he could not be fair. Mr. Weathers said—

THE COURT: May I interrupt you? I'm trying to provide your client with an opportunity to go forward with the trial, and that's my goal. Are you saying you want me to discharge this panel and start again another day?

MR. FREEMAN: Judge, I think we're at the point now, we're two jurors away from having to discharge the panel. We're just doing this as a matter of trying to expedite this. I know what the next three jurors will say.

MR. KEPPLE: (the prosecutor) I have six strikes left.

THE COURT: Let me ask you though, earlier in the day you made a motion for continuance which would delay the trial of your client. I would certainly urge that not happen, took it under advisement, gave you the option of putting on evidence later on. You also said you wanted to withdraw as counsel, your client wanted to discharge you. Do you still want to withdraw as counsel representing Mr. Flakes? I certainly recommend against it, but then a recommendation—55 cents will buy a diet Coke, and that's about all. Do you still want to withdraw?

MR. FREEMAN: I've got a motion still standing I can't change.

THE COURT: Yeah, you can. Do you still urge that motion to withdraw?

MR. FREEMAN: Yes.

THE COURT: You still urge the continuance? You never reduced it to writing. I'm sorry.

MR. FREEMAN: Over the lunch hour I prepared for voir dire. You told me—

THE COURT: I'm not being critical, Mr. Freeman. Are you asking to withdraw at this time? Are you urging your motion for continuance at this time?

MR. FREEMAN: Judge, I am urging a motion to quash this panel.

THE COURT: Are you urging a motion to withdraw as counsel?

MR. FREEMAN: Yes, Your Honor.

THE COURT: Is that what you want, sir?

THE DEFENDANT: Yes.

THE COURT: You want to discharge this man as your lawyer?

THE DEFENDANT: Yes.

THE COURT: What's the State's position?

MR. KEPPLE: Your Honor, State's ready to proceed.

THE COURT: I know you're ready to proceed. The man's going to have to be back in jail, have another lawyer. He says he's indigent. Are you indigent? Do you have the money to hire a lawyer?

THE DEFENDANT: No.

THE COURT: You want me to appoint you a lawyer or some judge to appoint you a lawyer in the event I permit your attorney to withdraw?

THE DEFENDANT: I don't know.

THE COURT: Prepare an application for appointment of counsel, and if that's what he wants, and if he signs that, I'll permit you to withdraw and grant your motion for continuance. And we'll discharge the panel and do this another day. I urge if that's what you want to do, I'm going to try to accommodate you. Is that still what you want to do?

THE DEFENDANT: Yes.

THE COURT: Motion to withdraw will be granted if he signs the motion for appointment of counsel. Your motion for continuance, against my better judgment, will be granted. And we'll set the matter for trial another day, and I know the state is unhappy with me. I apologize to you, but I don't know what to do. Don't anybody move until we get this things signed.

We'll recess until 9:00 o'clock tomorrow.

Appellant executed his affidavit of indigency and the following day Allan Tanner was appointed as his attorney. On July 6th, the case was again on the docket; appellant and Allen Tanner appeared, and the notation, "Deft refused to talk with atty Allen Tanner," appears on the docket. The case was next on the docket on July 14th when the defendant and Tanner appeared; the notation "Deft admonished by the Judge about his lawyer" was made on the docket sheet, and the case was set for trial for August 4th.

On August 3, 1989, attorney Freeman filed a motion requesting that he be substituted as the attorney of record. When the case was called for trial on August 4th, it was "carried" on the trial docket. On August 8th, the case was called for trial and Allen Tanner presented evidence on the motion to substitute Charles Freeman as attorney for appellant. The salient facts are that appellant refused to discuss the facts of his case with Tanner, refused to tell him what his defense was, did not want Tanner to issue any subpoenas and did not want Tanner to represent him. Appellant stated that Charles Freeman had been hired to represent him, and he wanted Freeman to represent him; Freeman was in the courtroom and was ready to go to trial. Attorney Freeman testified; Allen Tanner testified, and the prosecutor testified. When both sides rested, the trial judge denied the motion to substitute counsel, and appellant immediately stated "I want to file a motion to recuse." Curiously, the motion had apparently already been prepared, for the record shows the following occurred immediately after appellant stated he desired to file a motion to recuse:

THE COURT: Speak to your lawyer. The defendant's filed a motion to recuse. Do you adopt the motion?

MR. TANNER: Yes, sir.

THE COURT: I want to hear evidence on this motion right now. Let's go.

MR. TANNER: Judge, being that I was just given this motion by my client—

THE COURT: You adopted it, Mr. Tanner.

MR. TANNER: Can I have some time to review it? I was just given it by my client. May I have a short recess?

MR. BOONE: With the Court's permission, I'll read over Mr. Tanner's shoulder. I don't think I've gotten a copy of that.

The record shows a short recess was taken and the following then occurred:

THE COURT: Defendant will remain standing. Now, Mr. Tanner, what about this motion to recuse? What are you going to do with it?

MR. TANNER: Sir, at this time—

MR. FLAKES: I'll withdraw it.

THE COURT: You sure you want to do that?

MR. FLAKES: Yes, sir.

THE COURT: You concur in that withdrawal of the motion to recuse?

MR. TANNER: Yes, sir.

THE COURT: Done. All right. Now, this case is set for jury trial. You're entitled to a jury trial. Do you want a jury trial?

THE DEFENDANT: No, sir.

THE COURT: You sure?

THE DEFENDANT: I'm sure.

THE COURT: Are you of sound mind?

THE DEFENDANT: Yes, sir.

THE COURT: Is he of sound mind, Mr. Tanner?

MR. TANNER: Yes.

THE COURT: Have you had access to the State's information and files?

MR. TANNER: Yes, sir.

THE COURT: Do you want these charges read to you, or do you waive reading of the charges?

THE DEFENDANT: Waive.

THE COURT: Both cases?

THE DEFENDANT: Yes, sir.

THE COURT: State have a motion?

MR. BOONE: Yes, Your Honor, 520581 and 520582, State moves to abandon first paragraph and first enhancement paragraph. The State has a motion to abandon the two enhancement paragraphs.

THE COURT: You're charged with aggravated assault on a police officer, second offender charged with possession of cocaine. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Cause No. 520581, how do you plead to the offense of possession of cocaine?

THE DEFENDANT: No contest.

THE COURT: Do you know what a no contest plea is?

THE DEFENDANT: Yes sir.

THE COURT: Your lawyer's explained that to you?

THE DEFENDANT: Yes, sir.

THE COURT: You understand the result of a no contest plea is the same as a result of a plea of guilty if I'm satisfied you're guilty?

THE DEFENDANT: Yes.

THE COURT: You still want to plead no contest?

THE DEFENDANT: Yes, sir.

THE COURT: 520582, how do you plead to the offense of aggravated assault on a police officer?

THE DEFENDANT: No contest.

THE COURT: To the enhancement paragraph how do you plead, true or not true?

THE DEFENDANT: True.

THE COURT: Are you freely and voluntarily entering these pleas?

THE DEFENDANT: Yes.

THE COURT: I can't hear you.

THE DEFENDANT: Yes, sir.

THE COURT: Anybody threaten you or force you, make you plead no contest, make you plead true?

THE DEFENDANT: No, sir.

THE COURT: Punishment range for possession of cocaine is two to 20 years in the penitentiary, may include a fine of $10,000, punishment range for aggrava-

ted assault on a police officer, second offender, is two to 20 years in the penitentiary, may include a fine up to $10,000, understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Still want to plead no contest?

THE DEFENDANT: Yes.

THE COURT: You sure you want to do that?

THE DEFENDANT: Yes, sir.

THE COURT: I don't have to follow the plea bargain between your lawyer and the State. The deal, if I follow the deal, you cannot appeal without my permission. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you're not a citizen of the United States you could get deported, understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Still want to plead no contest to these two cases?

THE DEFENDANT: Yes, sir.

THE COURT: You sure you want to do that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions?

THE DEFENDANT: No, sir.

THE COURT: The Court accepts the plea, finds it's freely, voluntarily given, defendant's competent to enter the plea.

MR. BOONE: State offers State's 1 in each case, Your Honor.

MR. TANNER: No objection, Judge.

THE COURT: Recommendation?

MR. BOONE: Recommend 18 years in the T.D.C. on each case, finding of a deadly weapon on the aggravated assault charge.

THE COURT: Is that agreeable to you, Mr. Tanner?

MR. TANNER: Yes.

THE COURT: Agreeable to you?

THE DEFENDANT: Yes, sir.

THE COURT: For the record, State's 1 is admitted in each case. Anything else from the State?

MR. BOONE: State rests.

THE COURT: Anything from the defense?

MR. TANNER: No, sir.

THE COURT: Benard Flakes, Court finds you guilty with use of a deadly weapon, namely a flashlight, second offender. The Court assesses punishment at 18 years in the Texas Department of Corrections. The Court further finds you guilty of possession of a controlled substance, namely cocaine, punishment being assessed at 18 years in the Texas Department of Corrections. Do you have anything to say before sentence is pronounced in these two cases?

THE DEFENDANT: No, sir.

THE COURT: Having nothing to say, it's the order of the Court having been adjudged guilty of the offense of aggravated assault on a police officer with the use of a deadly weapon, second offender, punishment having been assessed at 18 years in the penitentiary of the State of Texas, further been found guilty of the offense of possession of cocaine, punishment been assessed at 18 years in the Texas Department of Corrections, that you be delivered by the sheriff of this county, county of Harris, to the director of the Texas Department of Corrections or any other person legally authorized to receive such convicts where you'll serve 18 years in each case. Sentence begins today.

You can file motion for new trial within 30 days, cannot appeal the conviction. That will be all.

MR. TANNER: Judge, Mr. Flakes would like to know if he could get credit for his time served.

THE COURT: Credit for time served in each case.

On August 11, 1989, attorney Freeman filed a motion for new trial, a second motion that he be substituted as attorney of record, a motion for a transcription of the record and his "Third Motion to Recuse and Disqualify" Judge Poe.

Judge Robert Montgomery was appointed to hear the motion to recuse Judge Poe, and a lengthy hearing began on October 5, 1989. The hearing was recessed at lunch.

The court reporter's notes state "no further proceedings were had" and the court's docket states "Hearing never resumed on 10–5 attorney Freeman in 351st D.C. not coming back. Judge Montgomery r/s to another day to resume." Finally on November 14, 1989, Judge Montgomery signed an order denying as moot the motion to recuse Judge Poe because appellant's motion for new trial was overruled by operation of law on October 23, 1989. While this recitation is long and detailed, it renders the discussion of appellant's points of error simple and understandable.

■ In his first point of error, appellant contends the court erred in denying Freeman's motion to substitute back in as appellant's counsel. In his brief, appellant acknowledges that an accused's right to select his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice, citing *Ex parte Windham*, 634 S.W.2d 718 (Tex.Crim.App. 1982), and other cases. Having agreed to the controlling law, it only requires that we properly apply it to the facts before us. Without any reference to the historical facts which we have painstakingly outlined above, appellant seeks to have us confine ourselves to the facts as they occurred on August 8th, i.e. (1) appellant was dissatisfied with his court appointed counsel; (2) court-appointed counsel was not prepared for trial; (3) appellant's mother had hired counsel, whom appellant desired to represent him, and (4) hired counsel was present in court, prepared and ready for trial. We refuse, however, to so restrict ourselves.

In order to determine whether error was committed by the trial judge in refusing to permit Freeman to reenter the cases, after he had withdrawn, we will apply an abuse of discretion standard. *United States v. Salinas*, 618 F.2d 1092, 1093 (5th Cir.1980), *cert. denied*, 449 U.S. 961, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir.1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977). It is clear from the record that appellant, through his counsel

Charles Freeman, sought to "obstruct the orderly procedure" in the trial court and to "interfere with the fair administration of justice," which appellant acknowledges the law prohibits. Their actions show that they not only demanded a judge of their choice but also the attorney of their choice. To have permitted attorney Freeman to substitute back into the case would have only multiplied the problem. Clearly the trial judge did not abuse his discretion. Appellant's first point is overruled.

In his second point of error, appellant contends that the attorney appointed by the trial court failed to render reasonably effective assistance of counsel. In his brief appellant acknowledges that (1) he told Tanner that he did not want Tanner to represent him; (2) he refused to counsel with Tanner; (3) he told Tanner he did not want Tanner to issue subpoenas, file motions or send an investigator to the scene, and (4) he never told Tanner what the facts were or what his defense was. Nevertheless, the record shows that Tanner (1) sought from the court and the court granted his request to hire an investigator; (2) reviewed the prosecutor's file on the case; (3) subpoenaed all the witnesses whom appellant's previous attorney had subpoenaed, and (4) had sought on several occasions to discuss the facts of the case with appellant.

In order to invalidate a plea of guilty of a plea of nolo contendere on the ground of ineffectiveness of counsel, the appellant must be able to satisfy the *Strickland v. Washington* [1] test. He must first demonstrate that his counsel's representation fell below an objective standard of reasonableness, and second, that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). We agree with the state that appellant cannot maintain his burden on either prong.

■ The first part of the test requires us to evaluate appellant's complaints of Tan-

1. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

ner's performance. In doing so, under the facts of this record, the following quote from *Strickland* is cogent:

> [t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions. (citations omitted)

466 U.S. at 691, 104 S.Ct. at 2066.

Under facts very similar to those presented by this record where the accused refused to cooperate with his counsel, the San Antonio court observed "it is difficult to fault the attorney when the client is uncooperative." *Rodriguez v. State,* 763 S.W.2d 893, 896 (Tex.App.—San Antonio 1988, pet.ref'd). We agree. Further, the state points out and we agree, that to permit an accused to refuse to cooperate with his attorney and to then complain of that lawyer's unpreparedness at trial, would be to allow the accused to circumvent the rule that he is not entitled to have the court appoint an attorney of his own choosing. Otherwise, simply by refusing to cooperate, he would be in control. Having failed to satisfy the first prong of the *Strickland* test, we need not address the second prong. We do note, however, that there is absolutely no showing by appellant that but for the claimed errors of Tanner, appellant would not have entered the plea of no contest. Appellant's second point is overruled.

■ In his third point of error appellant contends his plea of no contest was not voluntary. He argues "the coercive result of the trial court saddling appellant with a lawyer appointed by the trial court who was unable to effectively represent him ... and, further depriving appellant of his retained lawyer of choice" resulted in a coerced and involuntary plea. The record belies this. In our recitation of the historical facts, we set out the admonitions given to appellant during the plea process. The proceedings show that the trial judge repeatedly inquired of appellant whether he desired to enter the plea of no contest to determine if it was voluntary.

Appellant's argument that the plea was coerced because he was forced to accept the consequences of either trial by jury "facing confinement for life with Tanner" or pleas of no contest with an agreed punishment of 18 years confinement is unpersuasive. A plea is not involuntary solely because the accused pleads guilty out of a desire to limit the possible penalty. *Jones v. Estelle,* 584 F.2d 687, 690 (5th Cir.1978). To establish coercion, appellant must show that the fear of the greater penalty destroyed his ability to weigh rationally, with aid of counsel, the advantages of proceeding to trial against those of pleading no contest. *Jones,* 584 F.2d at 690. Appellant has totally failed to show this. His third point is overruled.

The judgments are affirmed.